Michael P. Richman (MR 2224)
Keith C. Owens (admitted *pro hac vice*)
Olya Petukhova (admitted *pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue, 37th Floor
New York, NY 10016-1314
Tel:  (212) 682-7474
Fax:  (212) 687-2329

Atorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| BOYLAN INTERNATIONAL, LTD., | ) | Case No. 07-11372 (MG) |
| d/b/a Boylan Studios, | ) | |
| | ) | |
| Debtor. | ) | |

## DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION[1]

Dated:  New York, NY
     April 4, 2008

         /s/ Michael P. Richman
         Michael P. Richman (MR 2224)
         Keith C. Owens (admitted *pro hac vice*)
         Olya Petukhova (admitted *pro hac vice*)
         FOLEY & LARDNER LLP
         90 Park Avenue, 37th Floor
         New York, NY 10016-1314
         Tel:  (212) 682-7474
         Fax:  (212) 687-2329
         Attorneys for Debtor and Debtor-in-Possession

---

[1] **THE DEBTOR IN THIS CASE IS A SMALL BUSINESS.  AS A RESULT, THE DEBTOR IS PERMITTED TO DISTRIBUTE AND HAS DISTRIBUTED THIS PLAN AS A DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE COURT.  IF AN OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.**

# TABLE OF CONTENTS

ARTICLE I CHAPTER 11 PLAN OF REORGANIZATION ....................................................... 1

ARTICLE II INTRODUCTION.............................................................................................. 1
Section 1.1    The Purpose of a Disclosure Statement. .....................................................1
Section 1.2    Acceptance and Confirmation......................................................................2
Section 1.3    Notice of Hearing........................................................................................2
Section 1.4    Funding of the Plan......................................................................................3
Section 1.5    Acceptance and Confirmation......................................................................4
Section 1.6    Feasibility.....................................................................................................4
Section 1.7    Releases........................................................................................................4
Section 1.8    "Best Interests" Test. ...................................................................................4
Section 1.9    Certain Federal Income Tax Consequences.................................................5
Section 1.10   General Tax Consequences..........................................................................5
Section 1.11   Alternatives to Confirmation and Consummation of the Plan....................6
          (i)      Liquidation under Chapter 7.  6
          (ii)     Alternative Plan of Reorganization.   6
Section 1.12   Company Background. ..................................................................................6
Section 1.13   Circumstances Leading to Filing Chapter 11..............................................7
          (i)      Boylan's Medical Condition.  7
          (ii)     The Landlord Litigation.        8
Section 1.14   Description of the Bankruptcy Case. ........................................................10
Section 1.15   Financial Information.................................................................................13
Section 1.16   Plan Overview............................................................................................13

ARTICLE II DEFINITIONS ................................................................................................ 13
Section 2.1    "Administrative Claim" shall mean a Claim for any cost or
               expense of administration in connection with the Chapter 11 Case allowed
               under § 503(b) of the Bankruptcy Code and entitled to priority under
               § 507(a)(2) of the Bankruptcy Code, including, without limitation, any
               actual, necessary costs and expenses of preserving the Debtor's estate and
               of operating the business of the Debtor, all allowances of compensation
               for legal or other professional services or reimbursement of costs and
               expenses under §§ 330 and 503 of the Bankruptcy Code or otherwise
               allowed by the Court, and all fees and charges assessed against the
               Debtor's estate pursuant to Chapter 123, title 28, United States Code.................13
Section 2.2    "Allowed Claim" shall mean any Claim or portion of a Claim (a)
               which has been scheduled pursuant to § 521(1) of the Bankruptcy Code,
               other than a Claim scheduled by the Debtor as contingent, unliquidated or
               disputed; or (b) proof of which has been filed pursuant to § 501(a) of the
               Bankruptcy Code on or before the Bar Date, and as to which no objection
               to the allowance thereof has been interposed within the period of time
               fixed by the Bankruptcy Code, Bankruptcy Rules or an order of the
               Bankruptcy Court, or (c) as to which any objection has been determined
               by a Final Order of the Bankruptcy Court allowing such claim or any

portion thereof.  Claims filed after the Bar Date are a nullity unless approved by an Order of the Bankruptcy Court........................................14

**Section 2.3**   "Avoidance Actions" shall mean any cause of action assertable under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections. ...............................................................................14

**Section 2.4**   "Ballot" shall mean the form transmitted to Creditors with the Plan on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code. ...............14

**Section 2.5**   "Bankruptcy Code" shall mean Title 11 of the United States Code (§§ 101-1532).......................................................................................14

**Section 2.6**   "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, and any court having jurisdiction to hear appeals therefrom.......................................................14

**Section 2.7**   "Bankruptcy Rule(s)" shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto..........................14

**Section 2.8**   "Bar Date" shall mean April 15, 2008, the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtor. ..............................................................14

**Section 2.9**   "Business Day" shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006. .........15

**Section 2.10**   "Carve Out" shall mean the carve out for professional fees and other expenses as set forth in the DIP Order.........................................15

**Section 2.11**   "Cash" shall mean legal tender of the United States of America or cash equivalents. ................................................................................15

**Section 2.12**   "Chapter 11 Case" shall mean the above-captioned case commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. ....................................................................15

**Section 2.13**   "Claim" shall mean a claim as defined in § 101(5) of the Bankruptcy Code, including without limitation, claims arising under § 502 of the Bankruptcy Code. ......................................................................15

**Section 2.14**   "Class" shall mean a class of holders of Claims or Interests described in Article III of the Plan.......................................................15

**Section 2.15**   "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court....................................15

**Section 2.16**   "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court, following notice, to determine whether or not to enter a Confirmation Order..........................................................................15

**Section 2.17**   "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan. ..............15

**Section 2.18**   "Creditor" shall mean:  (i) an entity that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) an entity that has a Claim against the Debtor's estate of the

kind specified in §§ 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code. ........................................................................15

**Section 2.19** "Debt" shall mean a debt as defined in § 101(12) of the Bankruptcy Code, including without limitation, claims arising under § 502 of the Bankruptcy Code. ....................................................15

**Section 2.20** "Debtor" shall mean Boylan International Ltd., d/b/a Boylan Studios. ..................................................................................15

**Section 2.21** "Debtor-in-Possession" shall mean Debtor as debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code. ................................15

**Section 2.22** "DIP Lender" means Alma Garnett as the Debtor in Possession lender pursuant to a Final Order (1) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 364(c) entered on June 13, 2007. ...............................................................................16

**Section 2.23** "DIP Order" means the Final Order (1) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 364(c) entered on June 13, 2007. ...................................................................16

**Section 2.24** "Disputed Claim" shall mean any Claim (other than an Allowed Claim): (i) which is scheduled pursuant to the Bankruptcy Code as disputed, contingent, unliquidated or in an amount of $0.00, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court for the filing of such objections, and as to which such objection has not been determined by a Final Order of the Bankruptcy Court. 16

**Section 2.25** "Distribution Date" shall mean any date on which a distribution under the Plan is to be made to the holders of Allowed Claims. ...........................16

**Section 2.26** "Effective Date" shall mean the date the Confirmation Order becomes a Final Order. ....................................................................16

**Section 2.27** "Estate" shall mean the estate created by § 541 of the Bankruptcy Code. 16

**Section 2.28** "Executory Contract" shall mean any of the contracts and unexpired leases to which the Debtor is a party or was a party as of the Petition Date and which are executory within the meaning of § 365 of the Bankruptcy Code. ....................................................................16

**Section 2.29** "Final Order" shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending; (ii) as to which any right to appeal or seek review, rehearing, or certiorari has been waived; or (iii) such order or judgment has been appealed and has been affirmed on appeal and the time for further appeal has expired; provided, however, that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant

to § 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure................................16

**Section 2.30**   "General Unsecured Claim" shall mean any unsecured Claim which is not an Administrative Claim, Priority Claim, Priority Tax, or Interest and that arose prior to the Petition Date and includes, without limitation, Claims based upon prepetition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case..........................................17

**Section 2.31**   "Insider" shall have the same meaning as that term is defined in § 101(31) of the Bankruptcy Code..............................................17

**Section 2.32**   "Interest" shall mean any and all equity interests in the Debtor, as defined in § 101(16) of the Bankruptcy Code. ........................17

**Section 2.33**   "Interest Holder" shall mean anyone who holds an Interest in the Debtor. .........................................................................17

**Section 2.34**   "Litigation Claims" shall mean the malpractice claim against Fox Horan, and any and all current and future causes of action under §§ 547 through 552 of the Bankruptcy Code held by the Debtor..................17

**Section 2.35**   "Person" shall mean an individual, a corporation, a partnership (including a limited partnership), an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization or a government or any political subdivision thereof or other entity.............17

**Section 2.36**   "Petition Date" shall mean May 8, 2007, the date of the filing of the Chapter 11 petition in this case. ..........................................17

**Section 2.37**   "Plan" shall mean this Plan of Liquidation, either in its present form or as it may be altered, amended or modified from time to time.................17

**Section 2.38**   "Priority Claim" shall mean a Claim allowable under § 507(a) of the Bankruptcy Code, including, but not limited to, Priority Tax Claims.............17

**Section 2.39**   "Priority Tax Claim" shall mean a Claim of any taxing authority, either secured or unsecured, entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.........................................................17

**Section 2.40**   "Professional Persons" shall mean, where applicable herein, Foley & Lardner LLP, counsel for the Debtor, and any other professionals who have been heretofore retained as per order of the Bankruptcy Court. .................17

**Section 2.41**   "Pro Rata" shall mean proportionally according to the total amount of Allowed Claims or Allowed Interests in a particular Class..............................18

**Section 2.42**   "Secured Claim" shall mean a Claim secured by a valid, properly perfected and enforceable mortgage, security interest and/or lien on property owned by the Debtor or upon the leasehold interest and assets of the Debtor, to the extent of the value of such Creditor's interest in the Debtor's estate's interest in such property.....................................18

**Section 2.43**   "Unclaimed Distribution" shall mean any distribution contemplated under the Plan unclaimed after the 120th day following the Distribution Date.  Unclaimed Distributions shall include checks and the funds represented thereby (a) which have been returned as undeliverable without a proper forwarding address; (b) which have not been paid; and

      (c) which were not mailed or delivered because of the absence of a correct address........................................................................................................18

**ARTICLE III DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS** ...................... 18
    **Section 3.1**    Summary. ..........................................................................18
    **Section 3.2**    Classification..................................................................19

**ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS** ................................................ 19
    **Section 4.1**    Class 1 – Priority Claims. ...............................................19
             (a)    Classification: ..................................................... 19
             (b)    Treatment: ........................................................... 19
             (c)    Voting: ................................................................. 19
    **Section 4.2**    Class 2 – General Unsecured Claims. ..............................19
             (a)    Classification: ..................................................... 19
             (b)    Treatment: ........................................................... 20
             (c)    Voting: ................................................................. 20
    **Section 4.3**    Class 3 – Interests. ..........................................................20
             (a)    Classification: ..................................................... 20
             (b)    Treatment: ........................................................... 20
             (c)    Voting: ................................................................. 20
    **Section 4.4**    Class 4 – Secured Claims. ...............................................20
             (a)    Classification: ..................................................... 20
             (b)    Treatment: ........................................................... 20
             (c)    Voting: ................................................................. 21
    **Section 4.5**    Class 5 – DIP Lender Claims. .........................................21
             (a)    Classification: ..................................................... 21
             (b)    Treatment: ........................................................... 21
             (c)    Voting: ................................................................. 21

**ARTICLE V TREATMENT OF UNCLASSIFIED CLAIMS** ................................................... 21
    **Section 5.1**    Summary. ..........................................................................21
    **Section 5.2**    Administrative Claims. ....................................................22
    **Section 5.3**    Administrative Claims Bar Date. .....................................22
    **Section 5.4**    Professional Compensation. .............................................22

**ARTICLE VI MEANS FOR IMPLEMENTATION** ................................................................ 22
    **Section 6.1**    In General..........................................................................22
    **Section 6.2**    Establishment of Liquidating Trust and Post-Confirmation Matters.........22
    **Section 6.3**    Purpose of the Liquidating Trust. ....................................23
    **Section 6.4**    Powers and Obligations of the Liquidating Trust. ...........24
    **Section 6.5**    Liquidating Trustee and Counsel. ....................................24
    **Section 6.6**    Retention of Professionals. ..............................................25
    **Section 6.7**    Resignation, Death or Removal of Liquidating Trustee. ..........25
    **Section 6.8**    Fees for the Liquidating Trustee and Counsel. .........................26
    **Section 6.9**    Trustee Standard of Care; Exculpation. ..........................26
    **Section 6.10**    Indemnification. ...............................................................26

**Section 6.11**  Transfer of Books and Records; Preservation of Privileges and Immunities. ........................................................................................27

**Section 6.12**  Duties and Powers of the Liquidating Trustee.............................27

**Section 6.13**  Liquidating Trust Interests..........................................................28

**Section 6.14**  Liquidating Trust Reserves. .......................................................28

**Section 6.15**  Termination of Liquidating Trust. ..............................................28

**Section 6.16**  Set-Offs....................................................................................29

**Section 6.17**  Revesting and Retention of Claims and Interests. .......................29

ARTICLE VII EXECUTORY CONTRACTS .............................................................. 29

**Section 7.1**  Rejection of Executory Contracts. .............................................29

**Section 7.2**  Rejection Claims.......................................................................29

ARTICLE VIII RESOLUTION OF DISPUTED CLAIMS & RESERVES .............................. 30

**Section 8.1**  Objections. ..............................................................................30

**Section 8.2**  Late Filed Claims. ...................................................................30

**Section 8.3**  Amendment of Claims. .............................................................30

**Section 8.4**  Reserve for Disputed Claims. ...................................................30

ARTICLE IX EFFECT OF CONFIRMATION ............................................................ 31

**Section 9.1**  Vesting of Property...................................................................31

**Section 9.2**  Discharge Granted Under Plan. ................................................31

**Section 9.3**  Releases..................................................................................31

**Section 9.4**  Exculpation. ............................................................................31

**Section 9.5**  Release by Debtor of Certain Parties. .......................................32

**Section 9.6**  Injunction.................................................................................32

**Section 9.7**  Limitations on Release, Exculpation and Injunction. ...................33

ARTICLE X CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN............... 33

**Section 10.1**  Conditions to Effectiveness of the Plan. .....................................33

ARTICLE XI PROVISIONS CONCERNING DISTRIBUTIONS ............................................ 34

**Section 11.1**  Manner of Payments under the Plan. .........................................34

**Section 11.2**  Fractional Cents......................................................................34

**Section 11.3**  Unclaimed Distributions. ..........................................................34

**Section 11.4**  Disputed Payments or Distribution............................................34

ARTICLE XII VOTING INSTRUCTIONS ................................................................... 35

**Section 12.1**  Voting of Claims......................................................................35

**Section 12.2**  Acceptance by a Class of Creditors. .........................................35

**Section 12.3**  Cramdown...............................................................................35

**Section 12.4**  Submission of Ballots. .............................................................35

**Section 12.5**  Blank Ballots. .........................................................................36

**Section 12.6**  Deemed Acceptance.................................................................36

ARTICLE XIII ACCEPTANCE AND CONFIRMATION ................................................... 36

**Section 13.1**  Feasibility................................................................................36

**Section 13.2** "Best Interests" Test. ................................................................36

ARTICLE XIV POST-CONFIRMATION REPORTS AND FEES ........................................... 38

ARTICLE XV RETENTION OF JURISDICTION ................................................................... 38

ARTICLE XVI AVOIDANCE ACTIONS ............................................................................... 39

ARTICLE XVII CREDITOR'S COMMITTEE ........................................................................ 39

ARTICLE XVIII GENERAL/MISCELLANEOUS PROVISIONS ........................................... 39

    **Section 18.1** Modification of the Plan. ...........................................................39
    **Section 18.2** Notices. ......................................................................................39
    **Section 18.3** Article and Section References. ...............................................40
    **Section 18.4** Payment Dates. ........................................................................40
    **Section 18.5** Enforceability. ..........................................................................40
    **Section 18.6** Applicable Law. .......................................................................40
    **Section 18.7** Successors and Assigns. ...........................................................40
    **Section 18.8** Reservation of Rights. ..............................................................41
    Neither the filing of this Plan, nor any statement or provision contained herein, be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 case. ............41

NYC_219797.5

Michael P. Richman (MR 2224)
Keith C. Owens (admitted *pro hac vice*)
Olya Petukhova (admitted *pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue, 37th Floor
New York, NY 10016-1314
Tel:  (212) 682-7474
Fax:  (212) 687-2329

Atorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| BOYLAN INTERNATIONAL, LTD., | ) Case No. 07-11372 (MG) |
| d/b/a Boylan Studios, | ) |
| | ) |
| Debtor. | ) |

**THE DEBTOR IN THIS CASE IS A SMALL BUSINESS.  AS A RESULT, THE DEBTOR IS PERMITTED TO DISTRIBUTE AND HAS DISTRIBUTED THIS PLAN AS A DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE COURT.  IF AN OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.**


**THIS PLAN CONTAINS RELEASES AND INJUNCTIONS INTENDED TO PROTECT CERTAIN OFFICERS AND SHAREHOLDERS OF THE DEBTOR FROM SUITS OR CLAIMS THAT MAY BE ASSERTED BY CREDITORS OR OTHER PARTIES-IN-INTEREST.  YOU ARE ENCOURAGED TO READ ARTICLE X FOR DETAILS ABOUT THESE THIRD-PARTY RELEASES AND PROTECTIVE INJUNCTIONS.**

**ARTICLE I**
**CHAPTER 11 PLAN OF REORGANIZATION**

Boylan International, Ltd., d/b/a Boylan Studios (the "Debtor") hereby proposes the following Chapter 11 Plan of Liquidation (the "Plan") pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code.

**ARTICLE II**
**INTRODUCTION**

On May 8, 2007, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  The case is assigned to the Honorable Martin Glenn, United States Bankruptcy Judge.  On April 4, 2008, the Debtor filed the Plan with the Bankruptcy Court.  On April 4, 2008, the Debtor submitted an application to the Bankruptcy Court requesting that it conditionally approve the Plan as a disclosure statement pursuant to § 1125 of the Bankruptcy Code.  On _____, ____, the Bankruptcy Court granted this application and has approved that a vote to accept or reject this Plan may be solicited from a holder of a Claim or Interest based upon this Plan alone.

**Section 1.1**      The Purpose of a Disclosure Statement.

The purpose of a disclosure statement is to provide creditors and holders of interests with such information as would enable a hypothetical, reasonable individual or entity typical of the holders of claims or interests to make informed judgments in voting on the Plan.  Because the Debtor is a small business, as defined by the Bankruptcy Code, this document is designed to be both a plan of reorganization and a disclosure statement.  The disclosure statement portion of this Plan necessarily involves a series of compromises between extensive "raw data" and the legal language in documents or statutes on the one hand and considerations of readability and usefulness on the other.  For further information you should examine the following pages carefully and you may wish to consult your legal and financial advisors.

**Section 1.2**     Acceptance and Confirmation.

You are urged to carefully read the contents of this Plan before making your decision to accept or reject the Plan.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they existed before the institution of this case.

**NO REPRESENTATIONS CONCERNING THE DEBTOR'S OPERATIONS, PARTICULARLY AS TO THE VALUE OF ANY OF ITS PROPERTY, ARE AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH HEREIN.  IN DECIDING WHETHER TO ACCEPT THE PLAN, YOU SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENTS OTHER THAN THOSE IN THIS PLAN.**

The Bankruptcy Court has fixed May _____, 2008 (the "Voting Deadline"), as the date by which holders of Claims against, and holders of Interests in, the Debtor must vote to accept or reject the Plan.  Creditors whose claims are impaired by the Plan may vote by filling out the enclosed ballot and sending it in the envelope provided for that purpose to:

<div align="center">

FOLEY & LARDNER LLP
90 Park Avenue, 37th Floor
New York, New York 10016-1314
Attention:  Olya Petukhova, Esq.

</div>

In order to be counted, Ballots must be **RECEIVED** by 5:00 p.m. on the Voting Deadline.

The vote of each creditor is important.  Creditors whose claims are not impaired by the Plan may not vote as they are conclusively presumed to have accepted the Plan.  In order for the Plan to be accepted by any class of creditors, it must be accepted by creditors who hold at least two-thirds in dollar amount of the claims in such class as to which votes are cast, and who comprise more than one-half of the voting creditors holding claims in such class.  **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIM AMOUNTS AND NUMBERS OF CREDITORS WHO ACTUALLY VOTE**.  An abstention by a creditor will count as acceptance of the Plan.

**Section 1.3**     Notice of Hearing.

On May 9, 2008, at 10:00 a.m., a hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, Alexander Hamilton Courthouse, New York, New York 10004 to consider the Debtor's

NYC_219797.5

request for confirmation of the Plan (the "Confirmation Hearing").  The Confirmation Hearing may be continued from time to time with notice only to those who have filed timely objections or answers.  The Confirmation Hearing may also be continued from time to time without further notice, by announcement in open court on the day of the scheduled hearing or any continuance thereof.

Any creditor or party-in-interest who wishes to object to confirmation of the Plan must file a written objection with the Clerk of the Bankruptcy Court, One Bowling Green, Alexander Hamilton Courthouse, New York, New York 10004 and serve copies on counsel to the Debtor whose name and address appears on the cover page of this Plan.  **Any objections must be filed with the United States Bankruptcy Court on or before 5:00 p.m. EDT and received by counsel by May _____, 2008.**

Under § 1125(f) of the Bankruptcy Code, the Bankruptcy Court has preliminarily approved that a vote to accept or reject this Plan may be solicited from a holder of a Claim or Interest based upon this Plan alone.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO ITS CREDITORS.  THE DEBTOR RECOMMENDS THAT HOLDERS OF CLAIMS OR INTERESTS VOTE TO ACCEPT THE PLAN.**

**ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

The rules of construction set out in § 102 of the Bankruptcy Code shall apply to the construction of the terms and provisions set forth in this Plan.

**Section 1.4**      Funding of the Plan.

This Plan shall be funded from the following sources:  (a) available Cash, if any, on the Effective Date; and (b) Cash available after the Effective Date from the liquidation, prosecution or other disposition, if any, of the Litigation Claims.

**Section 1.5**      Acceptance and Confirmation.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of § 1129 of the Bankruptcy Code are met.

In order for the Plan to be accepted by any class, it must be accepted by creditors who hold at least two-thirds in dollar amount of the claims in such class as to which votes are cast, and who comprise more than one-half of the voting creditors holding claims in such class. Creditors whose Claims are not impaired by the Plan may not vote, as they are conclusively presumed, pursuant to the Bankruptcy Code, to have accepted the Plan. Because the Plan does not impair holders of certain Claims, acceptances will not be solicited from holders of those Claims.

If the Plan is rejected by one or more impaired class, the Plan, or a modification thereof, may still be confirmed by the Bankruptcy Court Under § 1129(b) of the Bankruptcy Code (commonly referred to as a "cramdown") if at least one impaired class votes to accept the Plan, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each dissenting class.

**Section 1.6**      Feasibility.

As a condition to confirmation of the Plan, § 1129(a)(ii) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation of the Debtor, unless such liquidation is proposed in the plan. Because this is a liquidating Plan, this requirement is satisfied.

**Section 1.7**      Releases.

Under this Plan, the Debtor will release certain parties. These releases are described in detail in § 9.5 of the Plan, below.

**Section 1.8**      "Best Interests" Test.

Confirmation of the Plan also requires that each claimant either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such claimant would receive or retain if the Debtor would liquidate under Chapter 7 of the Bankruptcy Code.

4

To determine what creditors and holders of interests would receive if the Debtor as liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a Chapter 7 liquidation case. Such cash amount may be further reduced by additional administrative and priority claims that may result from the termination of the Debtor's business and the use of Chapter 7 for the purposes of liquidation. Here, the Debtor intends to liquidate or abandon the few tangible assets it has. In addition, the Debtor intends to investigate and, if appropriate, pursue claims against Fox Horan (as defined below) under a contingency-fee arrangement. It is unlikely that a Chapter 7 trustee would bring such claims, but if he or she did, the likelihood and amounts of any recoveries from pursuit of this litigation would be the same. Accordingly, the liquidation of the Debtor's assets would not yield a better recovery to creditors.

The Debtor's costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy. In addition, other Claims that might arise in a liquidation case or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case, would be paid from liquidation proceeds before the balance of those proceeds would be made available to pay prepetition Claims.

Because this is a liquidating Plan, the Debtor believes that the value of the distribution available through Chapter 7 liquidation will be substantially identical to the value obtainable under the Plan. Thus, the Plan satisfies the "best interests of creditors test."

**Section 1.9**     Certain Federal Income Tax Consequences.

The confirmation and execution of the Plan may have tax consequences to holders of Claims and Interests. The Debtor does not offer an opinion as to any federal, state, local or other tax consequences to holders of Claims and interest as a result of the confirmation of the Plan.

**Section 1.10**     General Tax Consequences.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISERS WITH RESPECT TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN. THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR.**

**Section 1.11**    Alternatives to Confirmation and Consummation of the Plan.

If the Plan is not confirmed and consummated, the theoretical alternatives include: (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (b) an alternative plan of reorganization.

(i) Liquidation under Chapter 7.

If no plan can be confirmed, the Debtor's bankruptcy case likely will be converted to a case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to its creditors in accordance with the priorities established by the Bankruptcy Code.  The Debtor estimates that under Chapter 7 of the Bankruptcy Code, all unsecured creditors would receive a distribution equal to or less than that proposed by this Plan because, aside from the Litigation Claims, the Debtor has insignificant tangible assets for a Chapter 7 trustee to liquidate and it is unclear whether a Chapter 7 trustee would pursue any such claims on behalf of unsecured creditors.  Under the Plan, the Liquidating Trustee will investigate and, if appropriate, pursue the Litigation Claims only on a contingency-fee basis, meaning that the Estate will not have to pay any administrative expenses for pursuit of the Litigation Claims absent a recovery through settlement or litigation.

(ii)        Alternative Plan of Reorganization.

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan.  However, without the participation of the Debtor's former principal, Nuala Boylan ("Boylan"), in operating the Debtor's business, it is unlikely that reorganization would be possible.  In addition, the exclusivity period expired on September 4, 2007, and no other party-in-interest has filed a proposed plan.  Because the Debtor has no significant tangible assets to liquidate, the Plan, as proposed, will yield the greatest possible recovery for creditors in that unsecured creditors will receive any recoveries from pursuit of the Litigation Claims.  Thus, the Plan enables creditors and all parties-in-interest to realize the most value under the circumstances.

**Section 1.12**    Company Background.

The Debtor was founded by Boylan as a privately held corporation under the laws of the state of New York in 1997.  Boylan owns 100% of the Debtor's shares, and until recently was the sole officer and director of the Debtor.

NYC_219797.5

For nearly ten years, the Debtor operated approximately 15,000 square feet of prime studio space (the "Premises") in the heart of Manhattan, New York. Located in the Starret-Lehigh Building (the "Building") at 601 West 26th Street, the Premises (consisting of three distinct spaces) provided clients with a unique location for photography, film and events, including spectacular views of the Hudson River and the Statue of Liberty. The Debtor was a highly sought-after location by leaders in the fashion, entertainment and art industry for photo shoots, commercials, music videos, fashion shows, art exhibits, and other events. The Debtor also hosted private events such as weddings and bar mitzvahs.

The Debtor generated revenue through bookings of its three studio spaces for the uses described above. The Debtor supplied its clients with the use of dining and lounging facilities, stereo equipment, wireless internet and in-house grips and props at no additional charge. Clients generally brought their own equipment and arranged for catering and other services; however, the Debtor regularly supplied additional lighting and camera equipment upon request through its relationship with a local leasing company. This was another source of revenue for the Debtor.

Much of the Debtor's success was attributed to the Debtor's team of experienced professionals. Boylan had twenty (20) years of experience in the fashion industry and was formerly a fashion editor with each of the leading triumvirate of fashion publications: Vogue, Harper's Bazaar and Elle. When the Debtor secured the Premises in 1997, the Building was an unknown, derelict factory location in Chelsea. Through efforts of Boylan and her team, as well as Boylan's connections, the Debtor created photographic studios that were a departure from the stereotypical studios and became an important venue for the elite in the fashion, art and entertainment businesses and a leading venue for events of the social elite.

The Debtor's sales figures steadily increased from January 2003 through August 2006. During this period, monthly sales averaged approximately $50,000 and the Debtor's total sales for the eight month period from January 2006 through August 2006 were nearly $800,000. The Debtor was primarily a cash business. The Debtor does not have a secured pre-petition lender or line of credit with a lender.

**Section 1.13**   Circumstances Leading to Filing Chapter 11.

(i) Boylan's Medical Condition.

The Debtor's success was dependent on Boylan and her team of professionals who provided clients with that "x-factor" that kept the clients returning to the Debtor's studios. Boylan became unable to devote her full attention to the Debtor's business beginning in June 2004 when she fell severely ill and was diagnosed with environmental lung disease with airway component secondary to mold exposure. Toxic mold had infested Boylan's apartment through water leakage and mold, causing pulmonary complications including moderately severe obstructive airway disease and probable bronchiectasis. Her blood tests revealed antibodies for highly toxic molds including the "killer mold" stachybotrys. Boylan was bed-ridden for three months and had to be cared for by her sister. Boylan was ordered by her physicians to leave her apartment and, since 2004, has suffered several serious relapses including a temporary loss of her voice, as well as complications from rhinorrhea, sinusitis, crippling headaches and acute bronchitis.

Boylan's medical condition has upset her personal and professional life and made it difficult, if not impossible at times, to conduct and grow the Debtor and its business. Despite Boylan's efforts and the efforts of her team, the business consequently suffered. Thus, despite reasonably strong sales in 2006, the business suffered a net loss of approximately $170,000.

        (ii)        The Landlord Litigation.

The Debtor occupied the Premises under the terms of a lease agreement (the "Lease Agreement") executed on May 14, 1997 by the Debtor and S.L. Building Company, as landlord. On or about November 20, 1998, 601 West Associates, LLC (the "Landlord") became the owner of the Building and immediately issued new rules and regulations, which required, among other things, the payment of certain fees for the use of freight elevators and to hold events, even though the Lease Agreement did not provide for such fees.

Between 1998 and 2001, the Landlord claims to have invested in excess of a reported $43 million in improvements on specific floors of the Building which resulted in a reassessment of the Building and an increase in real estate taxes. The Landlord passed the increased real estate taxes onto its tenants, including the Debtor. The Debtor claims that the increases were unfair because the improvements to which the taxes related provided little or no benefit to the Debtor. When the Debtor refused to pay the back real estate taxes, the Landlord filed an action in New York civil court (the "Civil Court") entitled *601 West Associates, LLC v. Boylan International,*

*Ltd.*, index no. 087164/03 (the "<u>Landlord Litigation</u>"), on August 6, 2003. The Debtor hired the law firm of Fox, Horan & Camerini ("<u>Fox Horan</u>") to defend it in the Landlord Litigation.

Although trial was scheduled to begin on January 30, 2007, due to Boylan's extreme illness brought on by an episode of toxic exposure, the Debtor (through its counsel Fox Horan) requested an adjournment, which request was denied by the presiding judge. As of the time of the trial, Boylan had been in bed with a high fever for three days, was unable to stand or walk, and was under a doctor's care. Despite her condition and due to the Civil Court's denial of the Debtor's request for an adjournment, Boylan appeared in court on January 31, 2007. At court, she announced that she was seriously ill, but the proceedings nonetheless went forward. Boylan was presented with a hand-written Stipulation (the "<u>Stipulation</u>") requiring the Debtor to make installment payments to the Landlord beginning only 15 days later. The Stipulation required the Debtor to pay a total of $292,000 to the Landlord in monthly installments of between $56,000 - $60,000 on the 15th day of each month. Boylan knew that the Debtor could not afford to live up to such arrangement, and advised the presiding judge of her concerns with, and objection to, the Stipulation. The presiding judge requested that Boylan take the stand and state her objections to the Stipulation on the record. However, the Debtor's counsel, Fox Horan, insisted that Boylan not to take this action, and instead execute the Stipulation. Boylan repeatedly told her counsel that, because of her illness, she was not in the condition to make this decision, that she was confused, and unable to understand what was happening. Boylan was nonetheless advised by her counsel that she had one minute to sign the Stipulation, and she did so in reliance on counsel.

Once Boylan was healthy enough to return to work, she, on behalf of the Debtor, immediately began trying to renegotiate the Stipulation to terms which were economically feasible to the Debtor. The Debtor requested a revised payment schedule, and was advised that her request would be taken up by the Landlord's board of directors. However, on April 30, 2007, the Debtor was served with a warrant of eviction (the "<u>Warrant</u>") subject to execution six business days later, on May 8, 2007. On May 4, 2007, the Landlord placed a freeze on the Debtor's bank account. This final straw left the Debtor with few options and precipitated the immediate filing for Chapter 11 protection.

NYC_219797.5

**Section 1.14**   Description of the Bankruptcy Case.

On May 8, 2007, the Debtor initiated the current Chapter 11 proceeding by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  As of the date hereof, no request has been made for the appointment of a trustee or examiner, and no official committees have been formed.  Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business as a debtor-in-possession.  The Debtor is a "small business debtor" as defined in § 101(51D) of the Bankruptcy Code.  The Honorable Martin Glenn is presiding over the Debtor's Chapter 11 Case.

On the Petition Date, the Debtor filed its schedules of liabilities and assets.  In its schedules, the Debtor lists a total of approximately $205,746.18 in assets.  The Debtor believes that the majority of the value of its company had come from its goodwill.  However, the Debtor believes that there is no longer any goodwill value to its business because: (i) the Debtor is no longer operating; (ii) the Debtor has not secured a new replacement property from which to operate the business; and (iii) Boylan is not able to work for the Debtor at this time.  Aside from those nominal tangible assets listed in its schedule B, the Debtor has no saleable tangible assets.

On  May 16, 2007, the Debtor filed an application with the Bankruptcy Court to appoint Foley & Lardner LLP as counsel to the Debtor in the Chapter 11 Case.  By order dated May 25, 2007, the Bankruptcy Court authorized the retention of Foley & Lardner LLP pursuant to § 327(a) of the Bankruptcy Code *nunc pro tunc* to the Petition Date.  On June 11, 2007, the Debtor filed an application with the Bankruptcy Court to retain James Moriarty as special real estate counsel to the Debtor in the Chapter 11 Case.  By order dated June 22, 2007, the Bankruptcy Court authorized the retention of James Moriarty pursuant to § 327(e) of the Bankruptcy Code *nunc pro tunc* to the Petition Date.

Shortly after the Petition Date, the Landlord filed a motion for relief from the automatic stay in order to exercise the Warrant.  As a result of negotiations between the Debtor and the Landlord, the Landlord agreed to allow the Debtor to remain in the Premises through August 31, 2007, in exchange for use and occupancy payments of $37,400 for the months of July and August 2007.  On or about August 22, 2007, the Debtor entered into a Stipulation and Order Resolving Motion of 601 West Associates LLC for Relief from the Automatic Stay which,

among other things, permitted the Debtor to remain in the Premises through October 15, 2007 as a holdover tenant. This Stipulation and Order was approved by the Court on September 4, 2007.

The Debtor's real estate counsel, James Moriarty, helped the Debtor to develop a strategy for staying the eviction. As part of this strategy, the Debtor obtained and filed in the Landlord Litigation an Order to Show Cause dated June 12, 2007, seeking, among other things, entry of an order vacating the Stipulation negotiated by Fox Horan on the basis that Fox Horan failed to enter into evidence the testimony and exhibits of the Debtor's expert witness which would have demonstrated that the Debtor owed only a small portion of the amounts asserted by the Landlord, and because Boylan, at the time she signed the Stipulation, was suffering from illness that impaired her judgment and ability to evaluate the Stipulation. The Civil Court adjourned the Order to Show Cause hearing, preserving the Debtor's right to seek to vacate the Stipulation.

The Debtor and the Landlord subsequently reached agreement in principle (the "Landlord Settlement") on a resolution of the Landlord Litigation. The Landlord Settlement is subject to the Bankruptcy Court's approval upon motion brought pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Since the Petition Date, the Debtor (through Boylan) had endeavored to take all steps necessary to stabilize and rationalize the Debtor's operations, and to attempt to locate a suitable replacement premises to operate its business. Unfortunately, the Debtor was not able to move forward with its plan to reorganize as a result of Boylan's deteriorating health. After enduring months of illness, Boylan was hospitalized in January 2008 at the National Jewish Medical Center in Denver, Colorado – the leading pulmonary treatment hospital in the United States, and she is now receiving treatment at a Boston-based medical facility. As a result of Boylan's poor health and hospitalization, she has not been able to restructure the Debtor's financial affairs and continue its business in Chapter 11 as she had hoped to do.

Because of her chronic health problems, Boylan was forced to resign as the Debtor's Chief Executive Officer and Director. Boylan's sister, Alma Garnett ("Garnett"), agreed to serve as the Debtor's Chief Restructuring Officer and Director at no cost to the bankruptcy estate in order to fulfill the Debtor's obligations under Chapter 11 including, without limitation, seeking to confirm a Chapter 11 Plan. On or about February 1, 2008, the Debtor filed a motion to retain

Garnett as the Debtor's Chief Restructuring Officer and Director. On February 27, 2008, the Bankruptcy Court entered an order granting the motion.

Garnett also serves as the Debtor's Debtor in Possession lender in this case, and has loaned the Debtor in excess of $118,000 (the "DIP Loan"). The Debtor has not repaid any of the DIP Loan as of the date of the filing of this Plan.

Section 1121 of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a Chapter 11 case during which a debtor has the exclusive right to file a plan. If a plan is filed by a debtor within that 120-day period, no other party may file a plan for an additional sixty days so that the debtor has sufficient time to seek acceptances of its plan.

On September 4, 2007, the Debtor's exclusivity period expired and since that date all parties have been entitled to file a plan of reorganization for the Debtor. Notwithstanding this opportunity, no other party has filed a plan in this case.

On February 27, 2008 the Bankruptcy Court entered an order (the "Bar Date Order") setting April 15, 2008 (the "Bar Date") as the last day to file proofs of claim in the Chapter 11 Case. In accordance with the Bar Date Order, the Debtor, on March 4, 2008, caused a notice of the Bar Date, proof of claim form, and an instruction sheet to the proof of claim form to be mailed to all known parties in interest in this Chapter 11 Case. Pursuant to the schedules and the proofs of claim filed with the Bankruptcy Court, the Debtor believes it has alleged total unsecured debt of approximately $658,000, of which approximately $510,000 relates to an unsecured claim asserted by the Landlord which claim is subject to adjustment in accordance with the Landlord Settlement if the Landlord Settlement is approved by the Bankruptcy Court. The Bar Date has not yet expired, and the Debtor has not completed its review of the claims that have been filed and does not agree that each of the claims filed to date are correct, accurate or valid. The Debtor will review all of the proofs of claim that have been filed and, following such review, determine whether to interpose an objection to any proofs of claim. If the Debtor does object to one or more proofs of claim, reserves will have to be made until the Bankruptcy Court rules on such objections. This process, therefore, of reviewing, objecting to, and reserving for claims may affect any distributions under the Plan.

On April 4, 2008 the Debtor filed its Plan with the Bankruptcy Court. On April ___, 2008, the Bankruptcy Court conditionally approved the Plan itself as providing adequate

information such that a separate disclosure statement is not necessary pursuant to 11 U.S.C. § 1125(f)(3)(B).

The Debtor believes that the Plan is feasible as required pursuant to § 1129(a)(ii) of the Bankruptcy Code. Through its Chapter 11 filing, the Debtor expects to free itself of its disputed creditors, dispose of all open, pending and threatened litigation, and liquidate its assets in an orderly fashion.

**Section 1.15** Financial Information.

The Debtor has filed with the Bankruptcy Court a Monthly Operating Report for each month the Chapter 11 Case has been pending. The Debtor is not currently operating, and is no longer generating any income.

**Section 1.16** Plan Overview.

In general and without limiting the specifics set forth herein, this Plan can best be characterized as a liquidating plan. That is, all available assets including cash, if any, and the proceeds from any Litigation Claims, including a potential claim against Fox Horan, shall be distributed to holders of Allowed Claims under the Plan. If the Plan is approved by the requisite number of creditors and the Bankruptcy Court, all creditors of the Debtor holding Allowed Claims will receive a distribution, if any, in accordance with the terms of the Plan and the Bankruptcy Code's priority scheme.

<div align="center">

**ARTICLE II**
**DEFINITIONS**

</div>

For the purposes of the Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

**Section 2.1** "Administrative Claim" shall mean a Claim for any cost or expense of administration in connection with the Chapter 11 Case allowed under § 503(b) of the Bankruptcy Code and entitled to priority under § 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor, all allowances of compensation for legal or other

professional services or reimbursement of costs and expenses under §§ 330 and 503 of the Bankruptcy Code or otherwise allowed by the Court, and all fees and charges assessed against the Debtor's estate pursuant to Chapter 123, title 28, United States Code.

**Section 2.2**    "<u>Allowed Claim</u>" shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to § 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which has been filed pursuant to § 501(a) of the Bankruptcy Code on or before the Bar Date, and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules or an order of the Bankruptcy Court, or (c) as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such claim or any portion thereof.  Claims filed after the Bar Date are a nullity unless approved by an Order of the Bankruptcy Court.

**Section 2.3**    "<u>Avoidance Actions</u>" shall mean any cause of action assertable under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

**Section 2.4**    "<u>Ballot</u>" shall mean the form transmitted to Creditors with the Plan on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

**Section 2.5**    "<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code (§§ 101-1532).

**Section 2.6**    "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the Southern District of New York, and any court having jurisdiction to hear appeals therefrom.

**Section 2.7**    "<u>Bankruptcy Rule(s)</u>" shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

**Section 2.8**    "<u>Bar Date</u>" shall mean April 15, 2008, the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtor.

**Section 2.9**    "Business Day" shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

**Section 2.10**    "Carve Out" shall mean the carve out for professional fees and other expenses as set forth in the DIP Order.

**Section 2.11**    "Cash" shall mean legal tender of the United States of America or cash equivalents.

**Section 2.12**    "Chapter 11 Case" shall mean the above-captioned case commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**Section 2.13**    "Claim" shall mean a claim as defined in § 101(5) of the Bankruptcy Code, including without limitation, claims arising under § 502 of the Bankruptcy Code.

**Section 2.14**    "Class" shall mean a class of holders of Claims or Interests described in Article III of the Plan.

**Section 2.15**    "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

**Section 2.16**    "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court, following notice, to determine whether or not to enter a Confirmation Order.

**Section 2.17**    "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

**Section 2.18**    "Creditor" shall mean:  (i) an entity that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) an entity that has a Claim against the Debtor's estate of the kind specified in §§ 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**Section 2.19**    "Debt" shall mean a debt as defined in § 101(12) of the Bankruptcy Code, including without limitation, claims arising under § 502 of the Bankruptcy Code.

**Section 2.20**    "Debtor" shall mean Boylan International Ltd., d/b/a Boylan Studios.

**Section 2.21**    "Debtor-in-Possession" shall mean Debtor as debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code.

NYC_219797.5

**Section 2.22** "DIP Lender" means Alma Garnett as the Debtor in Possession lender pursuant to a Final Order (1) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 364(c) entered on June 13, 2007.

**Section 2.23** "DIP Order" means the Final Order (1) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 364(c) entered on June 13, 2007.

**Section 2.24** "Disputed Claim" shall mean any Claim (other than an Allowed Claim): (i) which is scheduled pursuant to the Bankruptcy Code as disputed, contingent, unliquidated or in an amount of $0.00, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court for the filing of such objections, and as to which such objection has not been determined by a Final Order of the Bankruptcy Court.

**Section 2.25** "Distribution Date" shall mean any date on which a distribution under the Plan is to be made to the holders of Allowed Claims.

**Section 2.26** "Effective Date" shall mean the date the Confirmation Order becomes a Final Order.

**Section 2.27** "Estate" shall mean the estate created by § 541 of the Bankruptcy Code.

**Section 2.28** "Executory Contract" shall mean any of the contracts and unexpired leases to which the Debtor is a party or was a party as of the Petition Date and which are executory within the meaning of § 365 of the Bankruptcy Code.

**Section 2.29** "Final Order" shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending; (ii) as to which any right to appeal or seek review, rehearing, or certiorari has been waived; or (iii) such order or judgment has been appealed and has been affirmed on appeal and the time for further appeal has expired; provided, however, that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant to § 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure.

**Section 2.30** "General Unsecured Claim" shall mean any unsecured Claim which is not an Administrative Claim, Priority Claim, Priority Tax, or Interest and that arose prior to the Petition Date and includes, without limitation, Claims based upon prepetition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

**Section 2.31** "Insider" shall have the same meaning as that term is defined in § 101(31) of the Bankruptcy Code.

**Section 2.32** "Interest" shall mean any and all equity interests in the Debtor, as defined in § 101(16) of the Bankruptcy Code.

**Section 2.33** "Interest Holder" shall mean anyone who holds an Interest in the Debtor.

**Section 2.34** "Litigation Claims" shall mean the malpractice claim against Fox Horan, and any and all current and future causes of action under §§ 547 through 552 of the Bankruptcy Code held by the Debtor.

**Section 2.35** "Person" shall mean an individual, a corporation, a partnership (including a limited partnership), an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization or a government or any political subdivision thereof or other entity.

**Section 2.36** "Petition Date" shall mean May 8, 2007, the date of the filing of the Chapter 11 petition in this case.

**Section 2.37** "Plan" shall mean this Plan of Liquidation, either in its present form or as it may be altered, amended or modified from time to time.

**Section 2.38** "Priority Claim" shall mean a Claim allowable under § 507(a) of the Bankruptcy Code, including, but not limited to, Priority Tax Claims.

**Section 2.39** "Priority Tax Claim" shall mean a Claim of any taxing authority, either secured or unsecured, entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**Section 2.40** "Professional Persons" shall mean, where applicable herein, Foley & Lardner LLP, counsel for the Debtor, and any other professionals who have been heretofore retained as per order of the Bankruptcy Court.

NYC_219797.5

**Section 2.41** "Pro Rata" shall mean proportionally according to the total amount of Allowed Claims or Allowed Interests in a particular Class.

**Section 2.42** "Secured Claim" shall mean a Claim secured by a valid, properly perfected and enforceable mortgage, security interest and/or lien on property owned by the Debtor or upon the leasehold interest and assets of the Debtor, to the extent of the value of such Creditor's interest in the Debtor's estate's interest in such property.

**Section 2.43** "Unclaimed Distribution" shall mean any distribution contemplated under the Plan unclaimed after the 120th day following the Distribution Date. Unclaimed Distributions shall include checks and the funds represented thereby (a) which have been returned as undeliverable without a proper forwarding address; (b) which have not been paid; and (c) which were not mailed or delivered because of the absence of a correct address.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

**Section 3.1** Summary.

The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of the Plan. The treatment with respect to each Class of Claims and Interests provided for in this Article III shall be in full and complete satisfaction, release and discharge of such Claims and Interests. Impaired claims are those that are not being paid in full.

NYC_219797.5

**Section 3.2**     Classification.

The classification of Claims under this Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Claims | Impaired | Yes |
| 2 | General Unsecured Claims | Impaired | Yes |
| 3 | Interest Holders | Impaired | No (deemed rejected) |
| 4 | Secured Claims | Impaired | Yes |
| 5 | DIP Lender Claim | Impaired | Yes |

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS**

**Section 4.1**     Class 1 – Priority Claims.

(a)     *Classification:*

Class 1 consists of all Priority Claims.

(b)     *Treatment:*

Subject to the prior rights of Class 5 DIP Lender Claims as set forth in the DIP Order, and the prior rights, if any, of Class 4 Secured Claims holders of Allowed Class 1 Priority Claims will be paid, *pro rata* from the Liquidating Trust in accordance with their priority as set forth in § 507 of the Bankruptcy Code, or as otherwise agreed to by the affected claimant.

(c)     *Voting:*

Class 1 is an impaired class. Therefore, the holders of the Allowed Claims in Class 1 are entitled to vote to accept or reject the Plan.

**Section 4.2**     Class 2 – General Unsecured Claims.

(a)     *Classification:*

Class 2 consists of all General Unsecured Claims.

(b)     *Treatment:*

Holders of Allowed Class 2 General Unsecured Claims will be paid *pro rata* from those assets, if any, remaining in the Liquidating Trust, after payment of Allowed Class 1 Claims, Allowed Class 4 Claims, and Allowed Class 5 Claims, or as otherwise agreed to by the affected claimant.

(c)     *Voting:*

Class 2 is an impaired class.  Therefore, the holders of the Claims in Class 2 are entitled to vote to accept or reject the Plan.

**Section 4.3**     Class 3 – Interests.

(a)     *Classification:*

Class 3 consists of all Interests in the Debtor.

(b)     *Treatment:*

The holders of Class 3 Interests will receive no distributions on account of such Interests and such Interests will be cancelled and fully extinguished pursuant to, and on the Effective Date of, the Plan.

(c)     *Voting:*

Class 3 is an Impaired Class.  Pursuant to § 1126(g) of the Bankruptcy Code, holders of the Claims in Class 3 are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

**Section 4.4**     Class 4 – Secured Claims.

(a)     *Classification:*

Class 4 consists of all Secured Claims, if any, excluding the Class 5 DIP Lender Claims.

(b)     *Treatment:*

Subject to the prior rights of Allowed Class 5 DIP Lender Claims as set forth in the DIP Order, Holders of Allowed Class 4 Secured Claims will receive proceeds from the liquidation by the Liquidating Trustee of any collateral securing their claims, or as otherwise agreed to by the affected claimant.  To the extent that a Holder of an Allowed Class 4 Secured Claim is

undersecured, the unsecured portion of the Class 4 Secured Claim will be treated as a Class 2 General Unsecured Claim.

(c) *Voting:*

Class 4 is an impaired class. Therefore, the Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

**Section 4.5** Class 5 – DIP Lender Claims.

(a) *Classification:*

Class 5 consists of all claims of the DIP Lender under the DIP Order.

(b) *Treatment:*

Subject to the rights of Holders of Allowed Class 1 Claims as set forth in the DIP Order and as provided in section 507 of the Bankruptcy Code, Holders of Allowed Class 5 DIP Lender Claims will receive proceeds from the liquidation by the Liquidating Trustee of any collateral securing her claims, or as otherwise agreed to by the affected claimant. To the extent that a Holder of an Allowed Class 5 DIP Lender Claim is undersecured, the unsecured portion of the Allowed Class 5 DIP Lender Claim will be treated as a Class 1 Administrative Claim as set forth in the DIP Order subject to the Carve Out specified in the DIP Order.

(c) *Voting:*

Class 5 is an impaired class. Therefore, the Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

**ARTICLE V**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**Section 5.1** Summary.

Pursuant to § 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor are not classified for purposes of voting on, or receiving, distributions. Under the Plan, holders of such Claims are not entitled to vote. All Administrative Claims are instead treated separately in accordance with Article V and in accordance with the requirements set forth in § 1129(a)(9)(A) of the Bankruptcy Code.

21

**Section 5.2**      Administrative Claims.

Subject to the provisions of § 507(a) of the Bankruptcy Code, each holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim from the Liquidating Trust upon there being sufficient assets in the Liquidating Trust, or upon such other terms as may be agreed upon by such holder and the Debtor or otherwise upon order of the Bankruptcy Court.

**Section 5.3**      Administrative Claims Bar Date.

All Administrative Claims not already filed with the Court must be filed no later than 45 days after the Confirmation Date or be forever barred.

**Section 5.4**      Professional Compensation.

**All requests for payment of Professional Persons must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than forty-five (45) days after the Effective Date.**  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the allowed amounts of such requests shall be determined by the Bankruptcy Court.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION

**Section 6.1**      In General.

The Plan proposed by the Debtor constitutes a Plan of Liquidation in accordance with § 1123(b)(4) of the Bankruptcy Code.  The Plan acknowledges that the Debtor will reduce any remaining assets to Cash, which will be utilized to pay Claims as set forth in the Plan.  The Plan also provides for the creation of a Liquidating Trust.

**Section 6.2**      Establishment of Liquidating Trust and Post-Confirmation Matters.

On the Effective Date, the Liquidating Trustee shall do the following:  (a) execute the Liquidating Trust Agreement, substantially in the form attached as Exhibit A to this Plan; (b) take all other steps necessary or appropriate to establish the Liquidating Trust; (c) take all steps necessary to dissolve the Debtor in accordance with applicable law; and (d) transfer, deliver and assign to the Liquidating Trust, on behalf of all Creditors, all of the Estate's interest

in any property of the Estate, including but not limited to, the Litigation Claims (the "Liquidation Trust Assets").   It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of § 301.7701-4(d) of the Treasury Regulations.  All parties hereto shall treat the transfers in trust described herein for all purposes of the Internal Revenue Code (including, §§ 61(12), 483, 1001, 1012, and 1274) as if all the transferred assets, including all the Liquidation Trust Assets, had been first transferred to the Liquidating Trust Beneficiaries and then transferred by the Liquidating Trust Beneficiaries to the Liquidating Trust.  The Liquidating Trustee, the Liquidating Trust Beneficiaries, and the Debtor shall value the property transferred to the Liquidating Trust consistently for all federal income tax purposes.

The Liquidating Trust Beneficiaries shall be treated for all purposes of the Internal Revenue Code as the grantors of the Liquidating Trust and the owners of the Liquidation Trust Assets.  The Liquidating Trust Beneficiaries (except to the extent the IRS is a Liquidating Trust Beneficiary) shall be responsible for payment of any taxes due with respect to the operations of the Liquidating Trust.  The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Section 1.671-4(a) or (b) of the Treasury Regulations.

The Liquidating Trustee will distribute at least annually to the Liquidating Trust Beneficiaries the net income of the Liquidating Trust plus all net proceeds from the liquidation of the Liquidating Trust Assets in excess of the amounts reasonably necessary to maintain the value of the Liquidating Trust Assets or to meet claims or contingent liabilities (including Disputed Claims). During its existence, the Liquidating Trust shall not retain Cash in excess of a reasonable amount necessary to meet Claims and contingent liabilities (including Disputed Claims) or to maintain the value of the Liquidating Trust Assets during liquidation. The Liquidating Trustee shall use its continuing best efforts to dispose of the Liquidating Trust Assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

**Section 6.3**      Purpose of the Liquidating Trust.

The Liquidating Trust will be organized for the sole purpose of liquidating the remaining Liquidating Trust Assets and distributing the Liquidating Trust Assets pursuant to the Plan, with no objective or authority to continue or engage in the conduct of a trade or business.  In particular, the Liquidating Trust, through the Liquidating Trustee, will (a) place all Cash, if any,

into the Liquidating Trust; (b) reduce any remaining Liquidating Trust Assets, including, but not limited to, Litigation Claims, to Cash, provided however that the Liquidating Trustee shall have the discretion, to decide in her reasonable judgment, whether pursuit of the Litigation Claims is in the best interests of the Estate or the Liquidation Trust Beneficiaries; (c) make Distributions on account of Allowed Claims pursuant to the Plan and the Liquidating Trust; and (d) take such steps as are reasonably necessary to accomplish such purpose, all as more fully provided in, and subject to, the terms and provisions of, the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

**Section 6.4**     Powers and Obligations of the Liquidating Trust.

In addition to all powers enumerated in the Liquidating Trust Agreement and in § 6.2 hereof, from and after the Effective Date, the Liquidating Trust shall succeed to all of the rights of the Estate necessary to preserve, conserve and liquidate all Liquidating Trust Assets as quickly as reasonably practicable.  In that capacity, the Liquidating Trust shall have the exclusive power, on behalf and in the name of the Estate, to prosecute, defend, compromise, settle and otherwise deal with all such Liquidating Trust Assets subject to the restrictions of the Liquidating Trust Agreement, this Plan and the Confirmation Order; provided, however, that the Liquidating Trustee shall have no right to use Liquidating Trust Assets to conduct a trade or business.

**Section 6.5**     Liquidating Trustee and Counsel.

The Liquidating Trustee shall be Alma Garnett.  The Liquidating Trustee may retain counsel to represent her in her duties as Liquidating Trustee.  Provided that the Liquidating Trustee determines, in her discretion, that pursuit of the malpractice claim against Fox Horan is in the best interests of the Estate or the Liquidation Trust Beneficiaries, the Liquidating Trustee shall use her best efforts to retain a law firm that can pursue the malpractice claim against Fox Horan under a contingent-fee arrangement.  The Liquidating Trustee shall administer the Liquidating Trust in accordance with the Liquidating Trust Agreement, this Plan and the Confirmation Order.

NYC_219797.5

**Section 6.6**    Retention of Professionals.

The Liquidating Trustee shall be authorized, but not required, to retain and engage such other professionals and persons as may be necessary to carry out her duties under the Liquidating Trust Agreement. Professionals retained by the Liquidating Trustee shall submit monthly invoices to the Liquidating Trustee. If the Liquidating Trustee wishes to assert an objection to the compensation or reimbursement sought in a particular invoice, the Liquidating Trustee shall object in writing within fifteen (15) days of receipt of the monthly invoice. If no timely objection is made, the Liquidating Trustee may pay, without a Bankruptcy Court order, the amounts requested from the Liquidating Trust Operating Reserve Account. If the Liquidating Trustee's objection to the compensation or reimbursement sought in a particular invoice is not resolved within ten (10) days, either party may submit the issue to the Bankruptcy Court for resolution.

**Section 6.7**    Resignation, Death or Removal of Liquidating Trustee.

The Liquidating Trustee may resign at any time upon thirty (30) days' written notice, in accordance with the notice provisions of this Plan, to the Bankruptcy Court, to the Liquidating Trust and to the Post-Confirmation Committee (if appointed). Such resignation shall become effective prior to the expiration of such thirty (30) day notice period upon the appointment of a permanent or interim successor Liquidating Trustee. The Liquidating Trustee may be removed by the Bankruptcy Court only for good cause shown; such an application may be brought only by the Post-Confirmation Committee or, if the Post-Confirmation Committee is not appointed, any party-in-interest. In the event that the Liquidating Trustee position becomes vacant, the Post-Confirmation Committee, if any, shall appoint a successor Liquidating Trustee; provided, however, that if no Post-Confirmation Committee is appointed, or if the Post-Confirmation Committee fails to appoint a successor Liquidating Trustee within thirty (30) days after the occurrence of such vacancy, the Liquidating Trustee vacancy shall be filled by the Bankruptcy Court upon motion brought by any party-in-interest. If no successor Liquidating Trustee is appointed within sixty (60) days of said vacancy, the Liquidating Trust shall be dissolved and the Trust Assets shall be distributed in accordance with this Plan. Upon his, her or its appointment pursuant to this Plan, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his, her or its predecessor.

NYC_219797.5

**Section 6.8**     Fees for the Liquidating Trustee and Counsel.

The Liquidating Trustee shall be entitled to compensation at a rate of $200 per hour.  The Liquidating Trustee's counsel and other professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation and reimbursement of all the reasonable and necessary fees and expenses incurred by them in the conduct of the Liquidating Trustee's duties.  Claims for fees and expenses of the Liquidating Trustee, her counsel, and other professionals retained by the Liquidating Trustee shall be deemed Administrative Claims under the Plan.

**Section 6.9**     Trustee Standard of Care; Exculpation.

Neither the Liquidating Trustee, nor any director, officer, affiliate, employee, employer, attorney, professional, agent or representative of the Liquidating Trustee, shall be personally liable in connection with affairs of the Liquidating Trust to any Liquidating Trust Beneficiary, or the Liquidating Trust, or any other person, except for such of the Liquidating Trustee's acts or omissions as shall constitute willful misconduct or gross negligence.  Persons dealing with the Liquidating Trustee, or seeking to assert claims against the Estate or the Liquidating Trust, shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such persons in carrying out the terms of the Liquidating Trust Agreement.

**Section 6.10**     Indemnification.

Except as otherwise set forth in this Plan, the Liquidating Trustee and anyone employed or retained by the Liquidating Trustee, including but not limited to the Liquidating Trustee's counsel, shall be defended, held harmless and indemnified from time to time by the Liquidating Trust against any and all losses, claims, costs, expenses and liabilities to which such indemnified parties may be subject by reason of such indemnified party's execution in good faith of his, her or its duties pursuant to the discretion, power and authority conferred on such person by the Liquidating Trust Agreement, the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall indemnify neither the Liquidating Trustee, nor any person employed or retained by the Liquidating Trustee, for any actions taken by such indemnified parties that constitute bad faith, willful misconduct, gross negligence, willful disregard of their duties or material breach of this Plan.  Satisfaction of any obligation of the Liquidating Trustee arising pursuant to the terms of this Section shall be

NYC_219797.5

payable only from the Liquidating Trust Assets and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Liquidating Trust Assets.

**Section 6.11**    Transfer of Books and Records; Preservation of Privileges and Immunities.

On the Effective Date or as soon thereafter as is reasonably practicable, all books and records of the Estate, including, without limitation, all books and records relating to the administration of the Liquidating Trust, all Claims against the Debtor and the Liquidating Trust and all claims or causes of action of the Estate, shall be transferred or deemed assigned to the Liquidating Trust.

Any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trustee and his or her representatives, and the Debtor, the Estate and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges.  After the Effective Date, no person other than the Liquidating Trustee shall have the right to assert or waive any privilege of the Debtor or the Estate or to make any admission or statement against interest respecting the Debtor or the Estate.

**Section 6.12**    Duties and Powers of the Liquidating Trustee.

The Liquidating Trust and the Liquidating Trustee, as the representative of the Estate, except as limited in the Plan or Confirmation Order, shall be vested with all property, rights and powers of the Debtor.  The Liquidating Trustee will have the right and authority to do the following:  (a) control, manage and dispose of all the Estate's property for the benefit of the Creditors who will receive Distributions under the Plan; (b) prosecute causes of action on behalf of the Debtor and/or the Estate, including Litigation Claims and other actions against third parties; (c) file objections to Claims or actions to subordinate Claims or recharacterize debt as equity and file any other pleading in connection with any matter arising in the bankruptcy case; (d) file tax returns; (e) transfer (subject to Court approval) fee simple title to any property of the Estate; and (f) undertake any other action in the best interests of the Estate and not inconsistent with the provisions of this Plan and the Confirmation Order.  No causes of action of the Debtor or the Estate, including claims to avoid preferential transfers or fraudulent conveyances and

27

claims against insiders of the Debtor, are waived, precluded, foreclosed, limited or estopped by confirmation of the Plan.

**Section 6.13**   Liquidating Trust Interests.

The ownership of a beneficial interest in the Liquidating Trust shall not entitle any beneficiary under the Liquidating Trust to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting, except as specifically provided by the Liquidating Trust Agreement.  Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

**Section 6.14**   Liquidating Trust Reserves.

As soon as practicable after the Effective Date, upon the receipt of available cash, the Liquidating Trustee shall establish the reserves identified in Article III of the Trust Agreement (the "Reserves").  Upon the Liquidating Trustee's determination that there are sufficient assets in the Reserves to accomplish the purpose of the Reserves, the Liquidating Trustee shall distribute the excess to holders of Allowed Claims in accordance with the terms of this Plan.

**Section 6.15**   Termination of Liquidating Trust.

The Liquidating Trust shall terminate no later than the first (1st) anniversary of the Effective Date (the "Initial Liquidating Trust Term"); provided, however, that the Liquidating Trustee may extend the term of the Liquidating Trust for an additional two (2) years (the "Supplemental Liquidating Trust Term") by filing a notice of the Liquidating Trustee's intent to extend the term of the Liquidating Trust with the Bankruptcy Court and serving such notice on the Post-Confirmation Committee, if one is formed, and the United States Trustee at any time prior to the termination of the Initial Liquidating Trust Term; provided further, however, that such extension shall be without prejudice to the right of any party-in-interest under § 1109 of the Bankruptcy Code for cause shown, after notice to the Liquidating Trustee and the Post-Confirmation Committee, if one is formed, and a hearing to shorten the Supplemental Liquidating Trust Term.

**Section 6.16**   Set-Offs.

The Debtor may, but shall not be required to, set-off against any Claim any payments or other distributions to be made pursuant to the Plan in respect of such Claim, but neither the failure to do so, nor the allowance of any Claim hereunder, shall constitute a waiver or release by the Debtor of any such Claim the Debtor may have against such Claimant.

**Section 6.17**   Revesting and Retention of Claims and Interests.

Except as otherwise provided for in the Plan, upon the Effective Date, the property of the Estate will vest in the Liquidating Trust, free and clear of all liens, Claims and Interests.  The Liquidating Trustee may institute and prosecute the Litigation Claims, and any litigation necessary to accomplish and effectuate the resolution of any of the Claims.

**ARTICLE VII**
**EXECUTORY CONTRACTS**

**Section 7.1**     Rejection of Executory Contracts.

All contracts that are executory, in whole or in part, and all unexpired leases to which the Debtor is a party shall be deemed rejected pursuant to §§ 365 and 1123 of the Bankruptcy Code as of the Confirmation Date.

**Section 7.2**     Rejection Claims.

In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or its respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the date that is thirty (30) days after the later of the Effective Date or the date of such rejection.  Any such proof of claim is not dispositive and the Debtor may interpose an objection to any such Claim on any basis.

NYC_219797.5

## ARTICLE VIII
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

**Section 8.1**    Objections.

An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time on or before the Effective Date, but in no event later than ninety (90) days after the Effective Date – unless the Bankruptcy Court extends the time.

**Section 8.2**    Late Filed Claims.

Claims filed after the Bar Date are a nullity unless otherwise ordered by the Bankruptcy Court.

**Section 8.3**    Amendment of Claims.

A Claim may be amended after the Confirmation Date and prior to the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Liquidating Trustee to decrease, but not increase, the face amount thereof.

**Section 8.4**    Reserve for Disputed Claims.

Upon there being sufficient funds, the Liquidating Trustee shall reserve for each Disputed Claim that property which would otherwise be distributable to such holder on such Distribution Date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon.  The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

NYC_219797.5

# ARTICLE IX
## EFFECT OF CONFIRMATION

**Section 9.1**     Vesting of Property.

On the Confirmation Date, title to and possession of any and all property of the Estate, real or personal, shall be re-vested in the Liquidating Trustee free and clear of all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise provided in the Plan.

**Section 9.2**     Discharge Granted Under Plan.

The rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all causes of action against the Debtor or the Estate that arose before the Effective Date to the fullest extent permitted by § 1141 of the Bankruptcy Code, including but not limited to all causes of action of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (ii) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (iii) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order, except as provided herein or therein, shall be a judicial determination of discharge of all Claims or causes of action against the Debtor, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a discharged claim or cause of action.

**Section 9.3**     Releases.

Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature against the Debtor or any of its assets or properties.

**Section 9.4**     Exculpation.

Neither the Debtor, nor any of its respective members, shareholders, officers, directors, employees, attorneys, advisors or agents, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of the Bankruptcy Case, pursuit to confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except for fraud, willful misconduct or gross negligence.

31

**Section 9.5**     Release by Debtor of Certain Parties.

As of the Effective Date, the Debtor shall be deemed to have waived and released its present and former directors, officers, employees, attorneys, consultants, advisors and agents (acting in such capacity) (collectively, the "Released Parties") from any and all causes of action of the Debtor, including without limitation, causes of action which the Debtor as the Debtor-in-Possession otherwise has legal power to assert, compromise, or settle in connection with the Chapter 11 Case, arising on or prior to the Effective Date; provided, however, that the foregoing provisions shall not operate as a waiver or release of (i) contractual obligations owed by such person to the Debtor, (ii) causes of action relating to such person's actions or omissions determined in a Final Order to have constituted gross negligence or willful misconduct or (iii) causes of action against Fox Horan or any attorneys employed by and/or associated with Fox Horan.

**Section 9.6**     Injunction.

Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests against or in the Debtor, shall, as of the Confirmation Date, be permanently enjoined from taking any of the following actions against or affecting the Debtor or the Reorganized Debtor (the "Injunction Beneficiaries") with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order):

(a)     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries or any assets of any such successor in interest;

(b)     enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries, or any assets of any such successor in interest;

(c)     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries, or any assets of any such successor in interest; and

32

(d)     asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly against any obligation due the Injunction Beneficiaries or the assets of the Injunction Beneficiaries or any direct or indirect successor in interest to the Injunction Beneficiaries.

**Section 9.7**     Limitations on Release, Exculpation and Injunction.

The provisions of §§ 9.03, 9.04, 9.05 and 9.06 hereof shall not apply in the event of fraud, gross negligence, willful misconduct, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or *ultra vires* acts, and will not limit the liability of the Debtor's professionals to their client contrary to the requirements of DR 6-102 of the Code of Professional Responsibility.  Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

**ARTICLE X**
**CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

**Section 10.1**     Conditions to Effectiveness of the Plan.

The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

(a)     The Bankruptcy Court enters the Confirmation Order; and

(b)     The Confirmation Order becomes a Final Order.

**ARTICLE XI**
**PROVISIONS CONCERNING DISTRIBUTIONS**

**Section 11.1**   Manner of Payments under the Plan.

Payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**Section 11.2**   Fractional Cents.

Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

**Section 11.3**   Unclaimed Distributions.

Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within four (4) months from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. All unclaimed cash shall be distributed to the Liquidation Trust. Similarly, after such time, all unclaimed equity interests shall revert to the Liquidation Trust, and the claim of any other holder to such equity interest shall be discharged and forever barred; provided, however that any unclaimed equity distributable to holders of claims in Class 3 shall be redistributed ratably to holders of Allowed Claims in Class 5 unless the administrative costs of making such distributions would be excessive in comparison to the amount to be distributed.

**Section 11.4**   Disputed Payments or Distribution.

In the event of any dispute between and among Claimants (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under this Plan, the Liquidating Trustee may, in lieu of making such payment or distribution to such entity, make it

instead into an escrow account or to a distribution as ordered by a court of competent jurisdiction as the interested parties to such dispute may otherwise agree among themselves.

## ARTICLE XII
## VOTING INSTRUCTIONS

**Section 12.1**  <u>Voting of Claims.</u>

Each holder of an Allowed Claim in Classes 1, 2, 4 and 5 shall be entitled to vote to accept or reject this Plan.  Holders of Claims in Class 3 are impaired, are deemed to have rejected the Plan and are not entitled to vote.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this Plan under § 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof (as defined in the Securities Act of 1933 and the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

**Section 12.2**  <u>Acceptance by a Class of Creditors.</u>

Consistent with § 1126(c) of the Bankruptcy Code and except as provided for in § 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.  The votes of Insiders of the Debtor to accept the Plan will not be counted to determine acceptance, pursuant to Bankruptcy Code § 1129(a)(10).

**Section 12.3**  <u>Cramdown.</u>

To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, the Debtor reserves the right to request confirmation of the Plan under § 1129(b) of the Bankruptcy Code with respect to such Class(es).

**Section 12.4**  <u>Submission of Ballots.</u>

Pursuant to a Court order, ballots on the Debtor's Plan must be filed within a prescribed period of time.  All ballots should be properly completed as to whether the creditor accepts or rejects the Plan.  All ballots should be sent to Foley & Lardner LLP, 90 Park Avenue, 37th Fl., New York, NY 10016, Attn.:  Olya Petukhova, Esq.

**Section 12.5**   Blank Ballots.

Any ballot which is executed by the holder of an Allowed Claim or Interest, but which does not indicate an acceptance or rejection of the Plan, shall be deemed to be an acceptance of the Plan, in the amount set forth on the Debtor's Schedules, as may be amended.

**Section 12.6**   Deemed Acceptance.

Any member of an impaired Class of Claims that fails to vote either to accept or reject the Plan shall be deemed to accept the Plan.

## ARTICLE XIII
## ACCEPTANCE AND CONFIRMATION

**Section 13.1**   Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the Plan.  The Plan calls for the liquidation of all of the Debtor's assets and dissolution of the Debtor following the Final Distribution Date.  The Plan thus satisfies § 1129(a)(11) of the Bankruptcy Code.

**Section 13.2**   "Best Interests" Test.

Confirmation of the Plan also requires that each claimant either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such claimant would receive or retain if the Debtor was to liquidate under Chapter 7 of the Bankruptcy Code.

To determine what creditors and holders of interests would receive if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a Chapter 7 liquidation case.  Such cash amount may be further reduced by additional administrative and priority claims that may result from the termination of the Debtor's business and the use of Chapter 7 for the purposes of liquidation.

NYC_219797.5

Because the Plan provides for the liquidation of the Debtor's assets, the "best interests" of creditors test requires a comparison of the expenses of a Chapter 7 liquidation with the expenses of liquidation under the Plan. The Debtor believes that the value to be realized in liquidating the remaining assets of the Debtor's Estate would be substantially greater under the Plan as compared to a Chapter 7 liquidation.

If a Chapter 7 liquidation was pursued, the amount of liquidation value available to unsecured creditors and holders of Interests would be reduced, first, by the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 case and the Chapter 11 Case. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred in the Chapter 11 Case that are allowed in the Chapter 7 case, litigation costs and claims arising from the operations of the Debtor during the pendency of the Chapter 11 Cases. The Debtors believe that the members of each Class of Impaired Claims and Interests will receive at least as much under the Plan than they would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In addition, conversion to a Chapter 7 liquidation would delay any ultimate distributions to holders of Allowed Claims. If the Chapter 11 Case was converted, the Chapter 7 trustee would be required to hold a new first meeting of creditors pursuant to § 341 of the Bankruptcy Code. Given the time periods required to notice such a meeting and assuming a hypothetical conversion date of June 15, 2008, the meeting would probably not be held until at least August 2008. After that meeting, creditors would be given a second opportunity to file claims. Under the Bankruptcy Rules, creditors would have ninety (90) days from the date of the creditors' meeting to file claims. After the new claims bar date passed, the trustee would be required to review all of the claims. As a result of the conversion to Chapter 7, the Debtor believes that it is likely that creditors would file duplicate claims or change the amounts of their claims. This would require the Chapter 7 trustee to undertake a more complicated, expensive and time consuming claims reconciliation process before any distributions could be made to creditors. Because partial distributions rarely occur in Chapter 7 cases, no distribution to creditors likely could be made until the Chapter 7 trustee completed objections to claims. The Chapter 7 trustee would then have to file a final report, and the Office of the United States Trustee would have to

review the report. The process of filing and reviewing the final report can take anywhere from two to six months. Then the Court would have to schedule a hearing on the final report with notice to all creditors. Only after the Court approved the final report would a distribution be made to creditors.

Because conversion to Chapter 7 would delay a distribution and likely result in an equal or smaller distribution to holders of Claims, the Debtor submits that the Plan is in the best interests of creditors and meets the requirements of § 1129(a)(7) of the Bankruptcy Code.

## ARTICLE XIV
## POST-CONFIRMATION REPORTS AND FEES

The Liquidating Trust shall pay all quarterly fees required under 28 U.S.C. § 1930 until the earlier of (a) entry of a final decree closing the Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. § 1930 as are assessed, or (b) conversion or dismissal of the Chapter 11 Case.

## ARTICLE XV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)     To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b)     To determine requests for payment of Claims entitled to priority under §§ 507(a)(1) and 503(b) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)     To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts and unexpired leases;

(d)     To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

(e)     To determine all disputed, contingent or unliquidated Claims;

(f)     To modify this Plan pursuant to § 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Code;

(g)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan;

(i)      To resolve controversies and disputes regarding the interpretation or enforcement of the DIP Loan; and

(j)      To enter a final decree closing the Chapter 11 Case.

## ARTICLE XVI
## AVOIDANCE ACTIONS

Avoidance Actions.  The Debtor and the Liquidating Trustee reserve the right to institute preference and fraudulent conveyance actions, and the like, pursuant to §§ 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, for a period of 120 days after the Effective Date.

## ARTICLE XVII
## CREDITOR'S COMMITTEE

Appointment.  An Official Committee of Unsecured Creditors has not been appointed in this Chapter 11 Case.

## ARTICLE XVIII
## GENERAL/MISCELLANEOUS PROVISIONS

**Section 18.1**   Modification of the Plan.

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with § 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

**Section 18.2**   Notices.

All notices and correspondence to the Debtor should be forwarded in writing to:

FOLEY & LARDNER LLP
90 Park Avenue, 37th Floor
New York, New York 10016-1314
(212) 682-7474
Attn:  Olya Petukhova, Esq.

**Section 18.3**   Article and Section References.

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan; words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**Section 18.4**   Payment Dates.

If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

**Section 18.5**   Enforceability.

Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

**Section 18.6**   Applicable Law.

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

**Section 18.7**   Successors and Assigns.

The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

NYC_219797.5

**Section 18.8**    <u>Reservation of Rights.</u>

Neither the filing of this Plan, nor any statement or provision contained herein, be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 case.

Dated: New York, NY
     April 4, 2008

<div style="margin-left:3em">

_____/s/ Michael P. Richman_____
Michael P. Richman (MR 2224)
Keith C. Owens (admitted pro hac vice)
Olya Petukhova (admitted pro hac vice)
FOLEY & LARDNER LLP
90 Park Avenue, 37th Floor
New York, NY 10016-1314
Tel:  (212) 682-7474
Fax:  (212) 687-2329
Attorneys for Debtor and Debtor-in-Possession

</div>

NYC_219797.5