UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BOYLAN INTERNATIONAL, LTD.,<br>    d/b/a BOYLAN STUDIOS,<br><br>                        Debtor. | Chapter 11<br><br>Case No. 07-11372 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE LIQUIDATING TRUSTEE'S MOTION TO MODIFY A
CONFIRMED CHAPTER 11 LIQUIDATION PLAN**

*A P P E A R A N C E S:*

PATTON BOGGS LLP
*Attorneys for Alma Garnett as the Liquidating Trustee*
1185 Avenue of the Americas, 30th Floor
New York, New York 10036
By:    Anthony T. Nguyen, Esq.

TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By:    Greg M. Zipes, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

      Alma Garnett ("Garnett") as the Liquidating Trustee for Boylan International Ltd. (the "Debtor") moves for an order permitting the modification of the Debtor's confirmed chapter 11 liquidation plan (the "Motion"). (ECF Doc. # 164.) Garnett seeks to modify the Combined Disclosure Statement and Plan of Liquidation (the "Plan") (ECF Doc. # 106), which was confirmed on May 30, 2009, by extending the life of the Boylan Liquidating Trust (the "Trust").

      No objections were filed to the Motion. However, the Office of the United States Trustee (the "UST") moved for an order converting the Debtor's chapter 11 case to one under chapter 7

1

or, in the alternative, dismissing the chapter 11 case (the "UST Motion"). (ECF Doc. # 161.) The UST argued, *inter alia*, that conversion or dismissal was appropriate because the Debtor could not effectuate substantial consummation of a confirmed plan. (UST Motion, at 4.) The UST Motion was subsequently withdrawn shortly after the filing of the Motion. (ECF Doc. # 165.) For the reasons explained below, the Motion is granted, except that the extension of the Trust is limited to two years.

## BACKGROUND

By its terms, the Trust expires on June 9, 2011. (Motion ¶ 14.) Garnett seeks to extend the life of the Trust for two years with the option of an additional two year extension upon notice to the Court. Garnett asserts the extension is necessary so that the Trust can continue to prosecute the estate's "primary asset"—a malpractice claim against the Debtor's former counsel ("the Malpractice Claim"). (*Id.* ¶ 3.)

Prior to the bankruptcy, the Debtor operated approximately 15,000 square feet of prime studio space (the "Premises") located at 601 West 26th Street in New York City. The Debtor rented the Premises to clients who were interested in obtaining a location for photography, filming and various events. The Debtor's business ceased operating after it lost its lease of the Premises and its principal suffered health problems.

On the effective date of the Plan, the Trust was created and Garnett was appointed Trustee. (*Id.* ¶ 9.) All property of the estate vested in the Trust, including the Malpractice Claim. (*Id.* ¶ 10.) The Plan contemplated Garnett's prosecution of the Malpractice Claim to bring additional funds into the estate for distribution to creditors.[1] (*Id.* ¶ 10.)

---

[1] The estimated value of the Malpractice Claim is not mentioned in the Disclosure Statement or Plan. The amended complaint demands millions of dollars in damages. There are four causes of action, three for legal malpractice and one for breach of fiduciary duty. The three malpractice causes of action seek $2,256,000 in

2

The action was originally commenced on October 20, 2008 in the Supreme Court of New York, New York County. (Declaration of Alma Garnett (the "Garnett Declaration") ¶ 5, attached to the Motion as Exhibit A.) As chronicled in the Garnett Declaration, there were unforeseen delays in the case due to multiple adverse state trial court decisions that were ultimately reversed on appeal on March 3, 2011.[2] Garnett submits that the litigation is now proceeding in due course. (*Id.* ¶ 17.)

The Liquidation Trust Agreement, which was incorporated in the Plan, had an initial term of one year from the Plan's effective date. The Liquidating Trust Agreement also provided for an optional two-year extension of the Trust term upon filing notice with the Court. (Motion ¶ 13.) On June 5, 2009, such notice was filed, extending the Trust's term through June 9, 2011. (*Id.* ¶ 14.) Therefore, the Trust is set to expire before the Malpractice Claim can be resolved.

To date, only one post-confirmation disbursement has been made by Garnett to M&T Bank ("M&T"), a creditor of the estate, in the amount of $3,433.00. (Garnett Decl. ¶ 21.)

## DISCUSSION

### A.  Section 1127(b) Generally

Section 1127(b) of the Bankruptcy Code governs modifications to chapter 11 plans which have already been confirmed by a court. In its entirety, the section provides:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if

---

compensatory damages; the breach of fiduciary duty claim seeks $3.7 million in compensatory damages. (ECF Doc. # 158, Ex. 3.)

[2]    The defendant's motion to dismiss the original complaint was granted on December 1, 2009 with leave to amend. An amended complaint was filed on December 23, 2009, and on April 11, 2010, the trial court granted the motion to dismiss the amended complaint. Plaintiff appealed the dismissals, and on March 3, 2011, the Appellate Division, First Department reversed the dismissal in a reported decision. *See Garnett v. Fox, Horan & Camperini, LLP*, 82 A.D.3d 435 (1st Dept. 2011).

> circumstances warrant such modification and the court, after notice and a
> hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(b).

The term "modification" is not defined in the Bankruptcy Code and courts determine what constitutes a "modification" on a case-by-case basis. 7 COLLIER ON BANKRUPTCY ¶ 1127.03 (16th ed. rev. 2011). In *In re Doral Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 815 (S.D.N.Y. 1997), the court found that a "modification" occurred when there was an alteration of "the legal relationships among the debtor and its creditors and other parties in interest" or when the change to the plan affected the legal relationships among them. *See In re Joint Eastern & Southern District Asbestos Litig.*, 982 F.2d 721, 747–48 (2d Cir. 1992) (finding that a "modification" occurred under section 1127(b) when the change to the plan "effectively alter[ed]" a creditor's payment right); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1127.03. In this case, the proposed time extension is a "modification" for purposes of section 1127(b) because creditors will not benefit from the payment of proceeds for a *further* extended period of time.

In support of the requested relief, Garnett argues that the Court should grant the proposed extension because (a) unforeseen, unforced delays in the estate's malpractice action warrant modification of the confirmed Plan; (b) de minimis plan distributions so far mean that substantial consummation of the Plan has not yet occurred; and (c) the proposed plan modification does not alter the rights of any constituent of the Plan and consequently meets the requirements of sections 1122 and 1123. (Motion ¶ 16.)

To determine whether modification is warranted, the Court must determine: (i) whether Garnett has standing to request this relief, (ii) whether the Plan was "substantially consummated" within the meaning of section 1101(2), (iii) whether the circumstances warrant Plan

4

modification, (iv) whether the Plan, as modified, complies with sections 1122, 1123 and 1129 of the Code, and (v) whether additional disclosure and voting is necessary under section 1127(c). *See* 11 U.S.C. § 1127(b).

### B. Compliance With Section 1127(b)

#### 1. Standing

As an initial matter, Garnett must have standing to bring the Motion. Pursuant to section 1127(b), only the proponent of a plan or the reorganized debtor may modify a confirmed plan. *See* 11 U.S.C. § 1127(b). The bankruptcy court cannot on its own modify a confirmed plan. *In re Planet Hollywood Int'l.*, 274 B.R. 391, 400 (Bankr. D. Del. 2001). Modification must be sought by a proper party under section 1127(b). *Id.* Here, Garnett is certainly a plan proponent. Under the terms of the Plan, Garnett serves as the Liquidating Trustee, who is vested with the authority to, *inter alia*, prosecute the Malpractice Claim and distribute proceeds to creditors. (Plan § 6.5.) Garnett is also a secured creditor of the Debtor because she was the Debtor's debtor-in-possession lender and has not recovered the value of her loan. (*Id.* §§ 2.22, 4.5.) If the Malpractice Claim is not pursued by the Debtor, Garnett will receive little, if any, return on her secured claim in this bankruptcy case.

#### 2. Substantial Consummation

Section 1101(2) of the Code provides a definition for the term "substantial consummation." It is defined as follows:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

5

A determination whether substantial consummation has occurred depends on the facts and circumstances of each case. 7 COLLIER ON BANKRUPTCY ¶ 1127.03[2]. The burden of proof is on the proponent of the modification. *Id.* After a plan has been substantially consummated, modification is no longer an option except to the extent permitted by section 1127(e), which only applies to individual debtors. *Id.* at ¶ 1101.02[1][a].

According to Collier, there is a split in authority regarding the meaning of section 1101(2)(A). Under one line of cases, courts have held that "a plan is not substantially consummated until a significant majority of the property to be distributed *and the payments to be made* under the plan have been distributed and disbursed." *Id.* at ¶ 1101.02[3][a] (emphasis added). Courts justify this position by finding that the word "substantial" in section 1101(2)(A) "suggests that nearly all distributions are to have been made before a plan is substantially consummated." *Id.*; *see In re Heatron, Inc.*, 34 B.R. 526, 529 (Bankr. W.D. Mo. 1983) (finding that since payments to creditors was "property" under section 1101(2)(A), then "all or substantially all" of payments to creditors must be made for substantial consummation of a plan to occur). Other cases disagree:

> They point out that interpreting paragraph (A) to require distribution of substantially all property and disbursement of substantially all funds renders paragraph (C) a nullity. If substantially all funds must be disbursed prior to paragraph (A)'s being satisfied, what is the purpose of the requirement in paragraph (C) that there have been 'commencement of distribution under the Plan?' These cases conclude that paragraph (A) was not intended to apply to payments to be made under the plan over a period of time.

7 COLLIER ON BANKRUPTCY ¶ 1101.03[b].

The latter approach is consistent with the view taken by most courts. *In re Bullion Hollow Enterprises, Inc.*, 185 B.R. 726, 728 (W.D. Va. 1995) ("[A]lmost all of the courts that have dealt with [substantial consummation] since the rendering of the *Heatron* decision have

6

refused to follow the *Heatron* analysis [on whether payments to creditors should be construed under subsections (A) or (C) of section 1101(2)].") (collecting cases). Collier also concludes that the majority view is the better interpretation of the definition of substantial consummation because "it harmonizes all of the provisions of section 1102(2) [sic] and because it better preserves the expectations of parties to a confirmed plan." 7 COLLIER ON BANKRUPTCY ¶ 1101.03[b].

Although the Second Circuit has yet to analyze the application of substantial consummation with respect to section 1127(b) modifications, district and bankruptcy courts in the Second Circuit have adopted the majority view. *See In re Fansal Shoe Corp.*, 119 B.R. 28, 30-31 (Bankr. S.D.N.Y. 1990) ("It is now well-settled that substantial consummation may occur though the debtor has not distributed to the creditors substantially all of the amounts called for by the plan because substantial consummation requires only that there was a 'commencement of distribution under the plan.'") (citations omitted); *see also WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 96-Civ-7476, 1997 WL 599386, at *3 (S.D.N.Y. Sept. 29, 1997). Under subsection (C) of section 1101(2), "[t]here is no percentage or specific number of payments needed to have been paid in order to qualify as 'commenced.'" *Bullion Hollow*, 185 B.R. at 729 (citation omitted); *see also Fansal Shoe Corp.*, 119 B.R. at 31.

In this case, the payment to M&T does not make the Plan substantially consummated. In *Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 863-864 (E.D.N.Y. 2008), the court found that the debtor's liquidation plan was substantially consummated under section 1101(2), because, under the plan's procedures, "(1) the Liquidation Trust was funded by the transfer of the Debtor's money to the Trustee; (2) the Trustee assumed management and control over the Debtor's assets in the Liquidation Trust; and (3) the Trustee

7

began to distribute funds from the Liquidation Trust." *Id.* The same is true in this case since the Trust became funded by the Debtor's transfer of its property,[3] *see* Plan § 6.12, and Garnett, as Trustee, assumed management and control of the Debtor's assets in the Trust. *Id.* But, the one payment to M&T does not meet the requirements of section 1101(2)(C) because the payment to M&T was not made under the Plan; rather, the disbursement was made "pursuant to a *pre-confirmation agreement* whereby M&T Bank agreed to withdraw its plan ballot." (Garnett Decl. ¶ 21) (emphasis added). The payment to M&T also significantly differs from the facts of *Fansal Shoe Corp.* where the court held that the debtor substantially consummated its chapter 11 plan. 119 B.R. at 31. The *Fansal Shoe Corp.* court supported its ruling by noting that "the debtor . . . commenced distribution *under the plan* and has fully paid the class of administrative claims as well as the priority tax claimants." *Id.* (emphasis added).

### 3. The Circumstances Warrant Plan Modification But the Duration of the Proposed Extension Must Be Reduced

After confirmation, a plan may not be modified under section 1127(b) unless the plan proponent can demonstrate that the circumstances warrant modification. *See* 11 U.S.C. § 1127(b). Collier notes that "if unforeseen circumstances render the confirmed plan unworkable, modification may be warranted." 7 COLLIER ON BANKRUPTCY ¶ 1127.03[4]. For example, in *In re Temple Zion*, 125 B.R. 910, 913 (Bankr. E.D. Pa. 1991), the court permitted the debtor to modify its plan pursuant to section 1127(b) because unforeseen delays in obtaining zoning approval delayed the sale of the debtor's unimproved real estate. *Id.* The sale of this property was considered to be the "centerpiece" of the debtor's plan. *Id.* at 912. *See also In re Gene Dunavant & Son Dairy*, 75 B.R. 328 (M.D. Tenn. 1987) (finding that modification was

---

[3] The Debtor's property would presumably consist of cash and other fixed assets such as equipment. (ECF Doc. # 113.)

8

permissible because, through no fault of the debtor's, circumstances since the plan was originally formulated had changed). On the other hand, if a modification would "upset the expectations of creditors," the court should prohibit such modification. 7 COLLIER ON BANKRUPTCY ¶ 1127.03[4]; *see also Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 177 B.R. 791, 802 (S.D.N.Y. 1995) ("The court cannot adopt any modification that materially alters the plan and adversely affects a claimant's treatment.").

The circumstances of this case support modification. The delay in prosecuting the Malpractice Claim was unforeseeable because of protracted trial and appellate litigation. Garnett was appointed Trustee on June 9, 2008 and retained counsel to prosecute the malpractice claim in October 2008. (Garnett Decl. ¶¶ 2-4.) After approximately two and a half years, the proceeding has finally passed the motion to dismiss stage after the Appellate Division recently reversed the trial court dismissal of the complaint (*Id.* ¶¶ 5-16.) The defendant filed its answer on April 21, 2011. (*Id.* ¶ 17.) The Court concludes that these circumstances were sufficiently unforeseeable when the Plan was confirmed. Furthermore, no creditors opposed the Motion. The time extension will permit the litigation to go forward giving Garnett an opportunity to achieve value from the Trust's most important asset. In addition, creditors are not prejudiced as counsel prosecuting the Malpractice Claim has been retained on a contingency basis. (*Id.* ¶ 4.)

While the Court will grant the Motion to extend the Trust life for two years, the Court declines to grant Garnett the unilateral right to extend the Trust life for an additional two years thereafter. She will have to return to this Court for any further extension and explain why more time is required.

9

### 4. The Plan, as Modified, Complies with Sections 1122, 1123 and 1129

Section 1122 governs the classification of claims in plans. Section 1122 states:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
>
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

A plan must also fulfill eight requirements to satisfy section 1123(a). It must:

(i)   designate classes of claims and interests;

(ii)  specify unimpaired classes of claims and interests;

(iii) specify treatment of impaired classes of claims and interests;

(iv)  provide for equality of treatment within each class;

(v)   provide adequate means for the plan's implementation;

(vi)  provide for the prohibition of non-voting equity securities and provide an appropriate distribution of voting power among the classes of securities;

(vii) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.; and

(viii) in a case in which the debtor is an individual, provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

*See* 11 U.S.C. § 1123(a).

In this case, the Court previously confirmed the Plan, finding that it met the requirements of sections 1122 and 1123 of the Code. (ECF Doc. # 127.) The extension of the Trust's life does not alter the Plan's compliance with respect to these confirmation requirements. For these

same reasons, the Court also finds that the Plan, as modified, has not been changed in a manner that would preclude confirmation under section 1129(a).[4]

### 5. The Plan, as Modified, Does Not Require Additional Disclosure or Voting

Section 1127(c) states that "[t]he proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified." 11 U.S.C. § 1127(c). Section 1125, in turn, mandates particular postpetition disclosure and solicitation requirements by the plan proponent. *See* 11 U.S.C. § 1125. The House Report on section 1127(c) notes that if plan modifications are minor, "the court might determine that additional disclosure was not required under the circumstances." H. Rep. No. 95-595, 95th Cong., 1st Sess. 411 (1977). The filing of additional disclosure and re-solicitation is necessary if the plan is materially modified. *See In re Young Broad., Inc.*, 430 B.R. 99, 120 (Bankr. S.D.N.Y. 2010). "A modification which is not 'material' is by definition one which will not affect an investor's voting decision. Additional disclosure would serve no purpose and would therefore not be required." *In re Am. Solar King Corp.*, 90 B.R. 808, 824 n.28 (Bankr. W.D. Tex. 1988). Courts have also held that additional disclosure is unnecessary where a modification did not adversely affect the plan treatment of any creditor. *See* 7 COLLIER ON BANKRUPTCY ¶ 1127.03[3] (collecting cases). In *Temple Zion*, the court found that further disclosure under section 1125 was unnecessary because a plan modification only affected the interests of one creditor. 125 B.R. at 915. The rights of all other impaired classes remained unaltered. *Id.*

---

[4] Under Section 1129(a)(2) the plan must comply "with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). Courts have interpreted the 1129(a)(2) requirement to include satisfaction of the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code, as well as section 1126, concerning plan acceptance. *In re WorldCom, Inc.*, No. 02-13533(ALG), 2003 WL 23861928, at **25–26 (Bankr. S.D.N.Y. 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986). Section 1125 will be discussed below.

Here, the Court is satisfied that additional disclosure and re-solicitation is not necessary. Garnett is seeking an extension of the Trust term to prosecute the Malpractice Claim. The Debtor disclosed the fact that it has "no significant tangible assets to liquidate" and that the Plan "will yield the greatest possible recovery for creditors in that unsecured creditors will receive any recoveries from pursuit of the Litigation Claims." (Plan § 1.11(ii).) Since the Malpractice Claim is considered to be the Trust's central asset, an investor would presumably want to extend the Trust's life to continue the malpractice action in the hopes of receiving a greater recovery. Extending the Trust's life will not adversely affect creditor distributions, since counsel litigating the Malpractice Claim is doing so on a contingency basis.

## CONCLUSION

For the reasons explained above, the Court grants Garnett's Motion to modify the Plan, but the requested extension is limited to two years from June 9, 2011. Garnett will have to seek any further extension by motion and once again satisfy the requirements for a modification as explained above. Additionally, during the two year extension, the Debtor must remain current on its reporting requirements and payments to the UST.

**IT IS SO ORDERED.**

Dated: May 18, 2011
New York, New York

                                                       **/s/Martin Glenn**
                                                       MARTIN GLENN
                                              United States Bankruptcy Judge